639 P.2d 1043

STATE of Arizona, Appellee,

v.

Eddie Vance WILLIAMS, Appellant.

Nos. 1 CA–CR 4373, 1 CA–CR 4374.

Court of Appeals of Arizona,
Division 1, Department B.

May 21, 1981.

Rehearing Denied May 14, 1981.

Review Granted June 9, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Paul J. Prato, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

This appeal presents the interesting question of whether the principles of collateral estoppel (issue preclusion) prohibit the state from trying the defendant on a substantive charge where that same charge was used as the basis of a petition to revoke probation, and the trial judge in the revocation of probation proceedings found that the state had failed to prove the defendant had committed the substantive crime.

This appeal arises from the consideration of two criminal proceedings: the conviction of the defendant in cause No. CR–105855 of the crime of sexual assault, and the revocation of defendant's probation in Cause No. CR–101302.

Originally, the defendant, Eddie Vance Williams, was convicted, on his plea of guilty in Cause No. CR–101302 of the crime of robbery and was placed on probation for

a period of ten years commencing on April 17, 1978.

In February, 1979, an indictment was filed in Cause No. CR–105855 charging the defendant with the crime of sexual assault. Based upon this indictment and the defendant's alleged commission of the crime of sexual assault, a petition to revoke defendant's probation was filed in Cause No. CR–101302.

The State proceeded to try the probation violation first. At the violation hearing, it was clear that the sole basis for seeking revocation of probation was the defendant's conduct in committing the sexual assault. Following the hearing, the trial judge found that the state had failed to prove, by a preponderance of the evidence, that the defendant had committed the crime of sexual assault. The transcript of that proceeding clearly shows that the trial judge's ruling was based upon the State's failure to prove an element of the crime of sexual assault, namely the lack of consent by the victim. The trial court dismissed the petition to revoke probation and reinstated the defendant on probation.

Following the trial judge's ruling in the revocation of probation proceedings, the defendant moved to dismiss the criminal charge of sexual assault in Cause No. CR–105855 based upon principles of double jeopardy, *res judicata* and collateral estoppel. Defendant's motion to dismiss was heard by a different judge and the motion to dismiss was · denied. The defendant was subsequently tried by a jury on this charge, convicted of the crime of sexual assault, and sentenced to a term of 14 years imprisonment.

Based upon this conviction, the state again filed a petition to revoke defendant's probation in Cause No. CR–101302. This petition to revoke was granted and defendant was sentenced to a concurrent term of 10 to 14 years imprisonment on the robbery charge.

The defendant has appealed both cases, which have been consolidated in this court upon the defendant's request. In the sexual assault case, the defendant raises the propriety of the denial of his motion to dismiss, together with alleged legal errors occurring in the trial of that charge. The only issue raised in connection with the revocation of probation case is that if the sexual assault charge is reversed, the revocation of probation must likewise be reversed.

## DENIAL OF MOTION TO DISMISS

The defendant's position on the propriety of the denial of his motion to dismiss is aptly stated in his brief:

The law of collateral estoppel precluded the prosecution of Appellant once the petition to revoke Appellant's probation had been denied on the merits since if the State was unable to meet the burden of proof of preponderance of the evidence at the violation hearing, it could not by definition meet the burden of proof of beyond a reasonable doubt at the criminal trial using the same evidence.

This issue is one of first impression in this jurisdiction. Any detailed discussion of this issue must be prefaced by drawing a distinction between the principles of collateral estoppel (issue preclusion) as applied in a criminal case and the prohibition against double jeopardy embodied in the 5th Amendment of the United States Constitution.

Arizona courts held some time ago that the doctrine of *res judicata*, of which collateral estoppel is a part, applies in criminal cases. *State v. Little*, 87 Ariz. 295, 350 P.2d 756 (1960); *State v. Forteson*, 8 Ariz.App. 468, 447 P.2d 560 (1968).

This doctrine, as applied in criminal cases, has been defined by *State v. Little* as:

... the judgment in an action has the following effect in a subsequent action between the same parties: where the causes of action are the same, the prior judgment is conclusive, under the doctrine of res judicata, as to all issues which were or might have been litigated in the first action; where the causes of action are different, the judgment in the first action is conclusive under the doctrine of ... collateral estoppel, only as to such

issues as were actually litigated and adjudicated in the first action.[1]

87 Ariz. at 304, 350 P.2d at 762.

■ While involving the same legal maxim as is applicable in the doctrine of *res judicata*, that is, no one ought to be twice tried for the same cause, the double jeopardy clause contains important differences and distinctions in its application from those contained in the doctrine of *res judicata* or collateral estoppel. First, the defense of double jeopardy is available even in the absence of a final judgment, *State v. Riggins*, 111 Ariz. 281, 528 P.2d 625 (1974); the doctrine of collateral estoppel requires a final judgment. Second, double jeopardy requires identity of offenses, but the doctrine of collateral estoppel does not. *United States v. Marakar*, 300 F.2d 513 (3rd Cir.), vacated on other grounds, 370 U.S. 723, 82 S.Ct. 1573, 8 L.Ed.2d 803 (1962); *State v. Marquez*, 113 Ariz. 540, 558 P.2d 692 (1976). Third, and most important, in order for the defense of double jeopardy to attach, the defendant must have in fact been placed in jeopardy, that is, subject to conviction for the crime charged. *See State v. Simmerman*, 118 Ariz. 298, 576 P.2d 157 (App.1978). The doctrine of collateral estoppel has no such requirement.

■ For these reasons, it has long been established that the Fifth Amendment constitutional guarantee against double jeopardy does not have the effect of abrogating or supplanting in criminal cases the common law principles of *res judicata* and collateral estoppel. *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916). Thus, simply because the defense of double jeopardy is not applicable does not prevent the application of the doctrine of collateral estoppel in a criminal case. *State v. Hentschel*, 98 N.H. 382, 101 A.2d 456 (1953).

Because of the United States Supreme Court ruling in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), we believe some confusion has arisen concerning the merger of the doctrine of collateral estoppel into the Fifth Amendment prohibition against double jeopardy. In *Swenson*, three or four armed men robbed six poker players and the defendant was charged in separate counts with robbery of each of the six and with auto theft. He was acquitted in the Missouri state court on the charge of robbery of one of the victims, and then subsequently tried on the second robbery count and convicted of robbing a different victim. The U.S. Supreme Court held, under the principles of collateral estoppel, that where the single issue of identity, which could have been the only rational issue in dispute in the first trial, was once resolved, it could not be relitigated in a second trial. The court went on to hold that this aspect of collateral estoppel was embodied in the Fifth Amendment constitutional guarantee against double jeopardy. However, it is important to note that the defendant was in fact placed in jeopardy in the first trial and was again placed in jeopardy by the second trial. In our opinion, this gives rise to the basis of the double jeopardy holding. We do not read *Ashe v. Swenson, supra*, as holding that if in fact the defendant had not been placed in jeopardy by the first criminal proceeding, the common law doctrine of collateral estoppel would not have been applicable, even though no federal constitutional double jeopardy principle would come into play which would allow federal intervention into a state criminal prosecution.

The distinction between the common law doctrine of collateral estoppel and the Fifth Amendment prohibition against double jeopardy is important because the State has cited to the court several Arizona cases which have held that where the same underlying factual issue is involved in both a revocation of probation and a criminal trial, no double jeopardy occurs.

Paramount among these is *State v. Jameson*, 112 Ariz. 315, 541 P.2d 912 (1975), which involves the converse of the proceed-

---

1. Restatement 2d., Judgments, has adopted the nomenclature of "claim preclusion" to define the effects of *res judicata* and "issue preclusion" to define the effects of collateral estoppel. *See* Restatement of the Law, Second, Judgments, Introduction, Tentative Draft No. 7. While recognizing the conceptual effect of the Restatement nomenclature, we will continue to use the more recognized terminology in this opinion.

ings here, that is, the defendant was first prosecuted for possession of a stolen vehicle, which prosecution was dismissed. Subsequently, the defendant's probation was revoked based upon possession of the same stolen vehicle. In affirming the probation revocation, the court stated the issue to be "whether the same conduct as that litigated in the criminal action can thereafter be made the subject of probation revocation." After citing with approval the case of *Russ v. State*, 313 So.2d 758 (Fla.), cert. denied 423 U.S. 924, 96 S.Ct. 267, 46 L.Ed.2d 250 (1975), the court held:

> We consider the Florida Supreme Court's rationale to be more persuasive in resolving this conflict of authority and superior in its understanding of the proper relationships between criminal proceedings and probation revocation hearings.

However, it is clear that *Russ v. State, supra*, was a double jeopardy case, not a common law collateral estoppel case. As was stated in *Russ*:

> The petitioner's contention that double jeopardy applies by collateral estoppel is without merit. This [revocation of probation] is not a second prosecution for the same offense after an acquittal. If it were, a second and separate punishment could be imposed in addition to punishment for the offense previously established for which the petitioner is on probation.

313 So.2d at 760.

Moreover, as the dismissal in *Jameson* constituted an acquittal and because the burden of proof in the criminal trial is more stringent (beyond a reasonable doubt) than in a revocation hearing (preponderance of the evidence) the common law doctrine of collateral estoppel would not be applicable in any event. *United States v. National Ass'n. of Real Estate Boards*, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007 (1950); *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938).

Likewise, *State v. Simmerman, supra*, cited by the State, is a double jeopardy case. In *Simmerman*, the defendant first faced a revocation of probation proceeding which

was dismissed. Subsequently, the defendant was tried and convicted for the same conduct that formed the basis for the previous probation revocation. Following the conviction, a subsequent petition to revoke was filed, which was granted. The defendant contended on appeal that having to defend two petitions for revocation of probation based upon the same conduct was prohibited by principles of double jeopardy. The court rejected this contention, pointing out that the issues to be resolved in the two revocation proceedings were different—the first being whether he had possessed a stolen automobile; the second being whether he had been convicted of a felony. The issues in the two proceedings being different, the court found no double jeopardy problem. The court, however, pointed out:

> A different result might well be reached if a second petition for revocation had been filed and heard on the merits prior to the conviction on the underlying charge, thus resulting in multiple hearings on the facts relating to the commission of the offense.

118 Ariz.App. at 300, 576 P.2d at 159.

■ Thus, the State is correct in its contention that the subsequent prosecution of the defendant for the underlying charge which was the subject of the revocation proceedings does not result in violation of the double jeopardy clause as jeopardy did not attach in the revocation proceedings. *People v. Ward*, 80 Ill.App.3d 253, 35 Ill. Dec. 662, 399 N.E.2d 728 (1980); *People v. Buelow*, 94 Mich.App. 46, 287 N.W.2d 9 (1979); *Davenport v. State*, 574 S.W.2d 73 (Tex.Crim.App.1978); *State v. Eckley*, 34 Or.App. 563, 579 P.2d 291 (1978).

However, this does not end our inquiry, for as pointed out previously, the defenses of double jeopardy and collateral estoppel are not mutually exclusive:

> The conclusiveness of a fact which has been completely adjudicated by a criminal trial is not confined to a matter sufficient to support a plea of double jeopardy.

*State v. Little*, 87 Ariz. at 304, 350 P.2d at 762.

We therefore turn to the question of whether, under the common law doctrine of collateral estoppel, the state is precluded from prosecuting the defendant on the sexual assault charge.

■ The prerequisites necessary to establish collateral estoppel are that there must exist a valid final judgment, on the merits, rendered in a judicial trial between the same parties, and the issue sought to be relitigated must have been actually litigated in the first proceedings. *See generally State v. Byrd*, 94 Ariz. 139, 382 P.2d 555 (1963); *Robinson v. United States*, 284 F.2d 775 (5th Cir. 1960); *Smith v. United States*, 243 F.2d 877 (6th Cir. 1957); *State v. Forteson, supra.*

■ In this case, there is no doubt that in the revocation proceedings a court of competent jurisdiction rendered a final valid judgment in a contest between the State and the defendant, where the issue of whether sexual assault was committed by the defendant was actually litigated. The judge in the revocation hearing found that an element of sexual assault, lack of consent of the victim, was not proved by a preponderance of the, evidence. Both the State and the defendant had full opportunity to litigate in this issue.[2]

The dissent in this matter has pointed out that there exists, in the application of various constitutional rights, substantial differences between a revocation hearing and a trial. We agree that such differences exist based upon the consequences that flow from these two different proceedings. However, here we are not dealing with procedural rights which the defendant may possess, but rather with the fact finding function of the two tribunals involved. This fact finding function of the revocation proceeding is the same as the fact finding function of a criminal trial, insofar as is pertinent here, that is, did the State prove that the defendant committed the crime of sexual assault. The State was unable to

prove this fact under a lesser standard of proof (preponderance of the evidence) where the defendant did not have the protection of the exclusionary rule and hearsay was admissible. See cases cited in the dissent.

This failure is what gives rise to the application of collateral estoppel, not the equating of the consequences that may be visited upon the defendant in a revocation proceeding as compared to a criminal trial.

The proceedings in the revocation hearing contained all the necessary prerequisites to establish the doctrine of collateral estoppel. We therefore hold that under the doctrine of collateral estoppel, the State is precluded from relitigating the same issue in a subsequent proceeding.

In so holding, we realize that preparation by the State for the revocation proceedings may be somewhat hurried because of the following admonition by the Arizona Supreme Court in *State v. Jameson, supra.*

> Finally, we express disapproval of the practice of deferring the hearing on probation revocation until after the adjudication of guilt or innocence on the criminal charge when both proceedings are based upon the same facts. The question of whether the accused has violated the terms of his probation should be promptly resolved.

112 Ariz. at 318, 541 P.2d at 915.

Contrary to this dictum in *Jameson*, a large body of case law exists which holds that the sequence of criminal trial followed by revocation proceedings is more desirable from the standpoint of judicial economy. *Dail v. State*, 610 P.2d 1193 (Nev.1980); *Crawford v. State*, 144 Ga.App. 622, 241 S.E.2d 492 (1978); *Commonwealth v. Waters*, 252 Pa.Super.Ct. 357, 381 A.2d 957 (1977); ABA Project on Standards for Criminal Justice, § 5.3, Standards Relating to Probation (Approved Draft 1970) at page 62.

2. We do not now have the situation which existed prior to the adoption of Rule 27.7, Rules of Criminal Procedure, and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), of combining the revocation of probation proceeding with a dispositional determina-

tion. Under such a proceeding, the trial court could find the defendant committed a violation of probation, and yet, through the exercise of its discretion, continue the defendant on probation, thus blurring the issue of whether a violation actually occurred.

Moreover, Rule 27.7(e) dispensing with the violation hearing where the defendant is subsequently convicted of a criminal offense while on probation seems to favor reversing the sequence followed here.

Since we reverse defendant's conviction of sexual assault based upon collateral estoppel, we do not reach the alleged errors which occurred in that proceeding. Based upon that reversal, we likewise reverse defendant's revocation of probation.

Judgment and sentence in Cause No. CR–105855 is reversed. Judgment and sentence in Cause No. CR–101302 is reversed.

HAIRE, P. J., concurs.

EUBANK, Judge, dissenting:

I dissent. The majority opinion equates the result of a Rule 27.7(b)[1] probation violation hearing, where the judge found no violation, with a full-blown Rule 19[2] criminal trial on the merits resulting in the defendant's acquittal. Then, by applying the doctrine of collateral estoppel, the majority holds that the doctrine precludes the criminal prosecution of the defendant for the crime alleged and presented as a violation at the probation violation hearing. Such a holding rejects the basic difference between a probation violation hearing on the one hand, and the sentence in a criminal proceeding on the other. The distinction between the two procedures is illustrated in *State v. Risher*, 117 Ariz. 594, 574 P.2d 460 (App.1977), which was vacated by our supreme court at 117 Ariz. 587, 574 P.2d 453 (1978). In our *Risher* opinion, we noted that the award of probation was the sentence. The supreme court rejected this view and held "probation is not a sentence, but a feature of imposition of sentence." This view was expanded by the court in *Pickett v. Boykin*, 118 Ariz. 261, 576 P.2d 120 (1978). There the court held that since the defendant was serving time in the county jail as a condition of probation and not as a "sentence", he was not entitled to the double time allowance and must serve the full time awarded as a condition of probation. The court said:

Probation is not a sentence but rather a feature of suspension of imposition of sentence. *State v. Risher* .... Thus incarceration as a part of probation is not a sentence of confinement but simply one of the conditions which is established at the time sentence is suspended.

118 Ariz. at 262, 576 P.2d at 121.

A reading of the last eight paragraphs of the majority opinion here demonstrates that it equates a probation revocation proceeding with a criminal proceeding. Our supreme court and the United States Supreme Court have held otherwise. See the cases collected in *State v. Smith*, 112 Ariz. 416, 542 P.2d 1115 (1975). In a specially concurring opinion in *Smith*, Justice Hays said:

I know of no decision of the United States Supreme Court which mandates the application of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to probation revocation proceedings. I need look no further than the majority opinion for cases which emphasize that a probation revocation hearing is not a criminal proceeding. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The purpose of a revocation hearing is for the trial judge to ascertain if continued probation is merited in the best interests of the probationer and society. *State v. Bates*, 111 Ariz. 202, 526 P.2d 1054 (1974). As long as the use of the confession is properly restricted to the issue of probation revocation, *it is detrimental to the concept of probation to turn a revocation hearing into a criminal proceeding when by intent the revocation hearing should serve a purpose similar to that of a presentence report.* In this context, I note that even hearsay is permitted in determining whether probation should be revoked. Rule 27.7, Rules of Criminal Procedure.

The majority opinion defeats the rehabilitative purpose for which probation as a concept was established and constructs

1. Rules of Criminal Procedure, 17 A.R.S.

2. *Id.*

an additional procedural barrier to individual therapy. (Emphasis added).

112 Ariz. at 421, 542 P.2d at 1120.

The *Smith* view has become the prevailing view in *State v. Alfaro*, 127 Ariz. 578, 623 P.2d 8 (1980). There the court rejected the application of the exclusionary rule to probation revocation hearings and said:

> We think any additional benefit in double application of the exclusionary rule is outweighed by the harm done to the rehabilitative goal of probation. Rather than saying the police will have less incentive to obey the law, we think the probationer will have greater incentive to obey the terms of his probation if any reliable information will be available at a probation revocation hearing. We hold the exclusionary rule does not apply in probation violation hearings.[1]

[1 For a collection of the numerous other jurisdictions in accord with our decision, *see United States v. Frederickson*, 581 F.2d 711 (8th Cir. 1978). *See also United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161 (2d Cir. 1970) (excellent discussion of the underlying policy considerations).]

Thus, it is that "a proceeding for revocation is not subject to the limitations of a trial and is not governed by the same rules. [Citations omitted]. To remain at liberty under a suspended sentence is not a matter of right in Arizona, but a matter of grace and is purely in the discretion of the trial court. *State v. Maxwell*, [97 Ariz. 162, 308 P.2d 548 (1965)]." *State v. Walter*, 12 Ariz. App. 282, 284, 469 P.2d 848, 850 (1970).

The distinction, therefore, between a criminal trial and the resultant sentence and a probation revocation proceeding is significant. A criminal trial is a "punitive" action by the state, while probation, parole, and revocation proceedings are "remedial" actions intended to benefit both the defendant and the state. *See Standlee v. Rhay*, 557 F.2d 1303 (9th Cir. 1977). A second trial on a criminal charge may be barred by the doctrines of double jeopardy or collateral estoppel, but punishment flowing from the revocation of probation is not punishment for the probationary breach, but is instead punishment on the original charge.

*State v. Crowder*, 103 Ariz. 264, 440 P.2d 29 (1968).

The difference between a second trial on a criminal charge and a revocation of probation hearing is illustrated in *State v. Pietsch*, 109 Ariz. 261, 508 P.2d 337 (1973), where our supreme court held that no jeopardy attached where the county attorney dismissed the criminal complaint before the preliminary hearing but then used the same criminal act to obtain a revocation of defendant's probation. Further, in *State v. Jameson*, 112 Ariz. 315, 541 P.2d 912, 76 A.L.R.3rd 556 (1975), our supreme court held that the dismissal or acquittal of a related criminal charge, during or after trial, did not preclude the use of those circumstances for probation revocation consideration. The court said:

> The record indicates that a dismissal of the related criminal action occurred during the course of trial and so constitutes an acquittal of the appellant on the possession of a stolen vehicle charge. This fact raises the issue of whether the same conduct as that litigated in the criminal action can thereafter be made the subject of a probation revocation. In *People v. Grayson*, 58 Ill.2d 260, 319 N.E.2d 43 (1974), *cert. denied*, 421 U.S. 994, 95 S.Ct. 2001, 44 L.Ed.2d 484 (1975), the Illinois Supreme Court adopted the view that the doctrine of collateral estoppel precluded the state from relitigating the question of armed robbery in a probation revocation hearing after the probationer had been acquitted of the charge in a previous criminal proceeding. In a more recent decision, the Supreme Court of Florida declined to extend the collateral estoppel doctrine in such circumstances, reasoning that the probation revocation hearing is not a second prosecution for the same offense. *Russ v. State*, 313 So.2d 758 (Fla.1975). We consider the Florida Supreme Court's rationale to be the more presuasive [sic] in resolving this conflict of authority and superior in its understanding of the proper relationship between criminal proceedings and probation revocation hearings. Finally, we express disapproval of the practice of deferring the hearing on probation revocation until

after the adjudication of guilt or innocence on the criminal charge when both proceedings are based upon the same facts. The question of whether the accused has violated the terms of his probation should be promptly resolved.

112 Ariz. at 318, 541 P.2d at 915.

In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that collateral estoppel is part of the guarantee against double jeopardy and directed that the principle be applied with "realism and rationality." Under *Ashe*, a court must determine whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. Federal courts interpreting *Ashe* have suggested a three-step approach: (1) identification of the issues in the two actions to determine whether the issues are sufficiently similar and material in both actions to justify invoking the doctrine; (2) examination of the record of the prior case to determine whether the issue was "litigated" there; and (3) examination of the record of the prior proceeding to determine whether the issue was necessarily decided in the first case. *United States v. Hernandez*, 572 F.2d 218 (9th Cir. 1978).

Regarding the first step, the issues differ substantially in the two types of proceedings. The issue in a probation revocation is whether the probationer violated the terms of his probation, and, if so, whether the judge, in his discretion, should revoke the probation, permit the probation to continue, or change the terms of the probation. Rule 27, Rules of Criminal Procedure, 17 A.R.S. The issue is not whether he committed a crime but whether he violated the terms of his probation. No jury is involved in the proceeding and the trial judge determines the issue within his discretion. A criminal proceeding, on the other hand, determines the issue of the guilt or innocence of the defendant, on the merits, usually with a jury. The latter is the stuff from which

double jeopardy and collateral estoppel are created.

Here the trial court at the violation hearing did not determine the guilt or innocence of the defendant. Further, the state made no effort to meet the burden of proof required in a criminal proceeding. To hold that the violation hearing thus translates into a bar to further criminal prosecution requires our supreme court to substantially reverse their admonition, quoted both in the majority opinion and here, in *State v. Jameson, supra*, and to disregard the substantial differences and purposes of the two proceedings.

I would affirm the jury conviction of sexual assault.

## MOTION FOR REHEARING DENIED

JACOBSON, Judge.

On January 29, 1981, this court issued its opinion in the above matter reversing both the conviction of the defendant for sexual assault and an order revoking his probation based upon that conviction. In doing so, by a majority opinion, the court held that where the issue of whether the defendant had committed a subsequent criminal act which would justify a revocation of probation had been actually tried and litigated in the revocation proceedings and the state was unable to prove by a preponderance of the evidence that the defendant had committed the substantive act, the state was collaterally estopped from subsequently trying the defendant for this same crime.

In briefing this issue, neither counsel called to the court's attention Rule 27.8(e),[1] Rules of Criminal Procedure, and the court in its own research on this issue overlooked this rule. However, since the rule on its face seems to bear on the issue, the court believes that a supplemental opinion is in order to discuss the effect of that rule.

Rule 27.8(e) provides:

> Before accepting an admission by a probationer that he has violated a condition or regulation of his probation, the

1. The state's motion for rehearing correctly points out that this rule was formerly contained in Rule 27.7(c)(1) but was deleted. The state failed to recognize, however, that Rule 27.7(c)(1) was simply renumbered and moved to present Rule 27.8(e).

court shall address him personally and shall determine that he understands the following:

\* \* \* \* \* \*

(e) If the alleged violation involves a criminal offense for which he has not yet been tried, the probationer shall be advised, at the beginning of the revocation hearing, *that regardless of the outcome of the present hearing*, he may still be tried for that offense, and any statement made by him at the hearing may be used to impeach his testimony at the trial. (Emphasis added).

Arguendo, this rule could be construed to mean that if a probationer must be *advised* that he may be tried for the criminal offense "regardless of the outcome," that as a matter of substantive law, a defendant *can* be tried for the criminal offense "regardless of the outcome," a result contrary to that reached by a majority of this court in its original opinion.

█ Insofar as this rule attempts to encompass substantive legal rights, it is substantially correct. First, the rule is correct in its assumption that if the defendant's probation is revoked based upon the commission of a subsequent criminal act, such a revocation does not bar a criminal trial based upon that same criminal action. *People v. Vahle*, 60 Ill.App.3d 391, 17 Ill.Dec. 620, 376 N.E.2d 766 (1978). This principle is conceded in our original opinion.

Second, the rule is correct in its assumption that for purposes of the double jeopardy clauses of the United States and Arizona Constitutions, a finding that defendant did not commit the offense giving rise to the revocation proceedings would not bar a subsequent prosecution for the same offense. Again, this principle is conceded in our original opinion.

█ Lastly, the rule is a correct statement of the substantive law that admissions of a probationer at a revocation hearing are, after appropriate warnings, admissible for the purpose of impeachment in a trial of the probationer on the substantive charge. *See State v. Boyd*, 128 Ariz. 381, 625 P.2d 970 (1981).

The question remains whether this rule is a correct statement of the law insofar as principles of collateral estoppel are concerned, principles upon which we relied in reversing this matter. The comments to this rule as it formerly appeared under Rule 27.7(c)(1), simply indicate that this warning "is to inform the probationer that, barring an agreement to the contrary, the revocation hearing does not prevent his prosecution on any charges arising out of the actions on which the revocation petition is based." No citation authority is given for the committee comment. However, the comment is more substantively correct than the rule itself, given the setting in which the rule is to be applied—the *admission* of violation of the conditions of probation.[2] As previously indicated, the law is clear that a finding that a probationer violated the terms of his probation by committing a subsequent criminal act, does not bar a criminal prosecution for that act.

It appears that former Rule 27.7(c) dealt with admissions and therefore should more properly have been included under Rule 27.8 which covered this subject matter. In accomplishing this technical change, the rule makers lifted the language of former Rule 27.7(c), including the terminology "regardless of the outcome of the present hearing," which is simply not applicable to the determination of the voluntariness of an *admission* of violation of probation. If the probationer admits the commission of a subsequent criminal act, then only one outcome of that hearing, insofar as finding a violation of probation, can occur.

█ We therefore conclude that the phraseology "regardless of the outcome of the present hearing" is, in the context of the voluntariness of an admission, surplusage.

2. This comment was echoed in former Rule 27.8, as promulgated in 1973, which simply required the court upon admission of violation to determine "whether the probationer understands that if the violation involves the commission of a criminal offense for which he has not yet been tried, he may still be tried for that offense ...." Absent from this former rule is the troublesome language "regardless of the outcome...."

In reaching this conclusion, we are mindful of A.R.S. § 12–109, which empowers the Supreme Court to promulgate rules to "regulate pleading, practice and procedure in judicial proceedings," but "[t]he rules shall not abridge, enlarge or modify substantive rights of a litigant.". To give literal effect to the rule language that "regardless of the outcome" of a revocation proceeding a probationer may be tried for the same offense which constituted the grounds for revocation would "abridge, enlarge or modify" what we have determined to be the substantive rights of the probationer.

By this supplemental opinion, the state's motion for rehearing is denied.

HAIRE, P. J., concurs.

EUBANK, Judge, dissenting:

For the reasons stated in my dissent to the original opinion in this matter, I vote to grant the motion for rehearing.